[No. 33484. Department Two. May 3, 1956.]

C. V. WILDER COMPANY *et al., Respondents,* v. THE STATE
OF WASHINGTON, *Appellant.*[1]

*The Attorney General* and *Robert L. Simpson, Assistant,*
for appellant.

*Pebbles & Swanson,* for respondents.

HILL, J.—This is an action to recover $2,540.66 in taxes
(the three per cent sales or use tax) assessed and collected
by the state of Washington from the C. V. Wilder Company

[1] Reported in 297 P. (2d) 241.

and Gaasland Company, Inc., the plaintiffs, who are herein-after called the contractors.

In March, 1950, the contractors entered into an agreement with the state of Washington, through its highway depart-ment, to construct two snowsheds containing seven hundred twenty precast reinforced concrete roof beams. The beams, as they will hereinafter be referred to, were to be paid for by the state on the basis of the cubic yards of concrete used in each beam plus the cost of the reinforcing steel. (We shall hereinafter refer to the highway department as though it were a party to the contract, inasmuch as the state, in the exercise of its taxing power, is a party to this litigation.) It is stipulated that the work contracted for constituted con-struction or improvement of a publicly owned highway used primarily for vehicular traffic.

The contractors entered into an agreement with the Se-attle Concrete Pipe Company, hereinafter called the pipe company, to do the work of constructing the beams and load-ing them onto the contractors' trucks, at an agreed cost of $117.46 per beam.

It is stipulated that "all concrete used in such beams and all steel reinforcing rods were the property of and supplied by" the contractors; that "title to said beams and all their component parts was at all times" in the contractors; and that they "paid retail sales tax on the purchase price of all concrete, reinforcing steel and other materials forming com-ponent parts of said roof beams."

However, the state assessed and collected a three per cent excise tax based upon the charges made by the pipe com-pany for the labor and mechanical services furnished in the construction of the beams. It is stipulated that the pipe company "agreed to and did perform labor in mixing con-crete, pouring concrete, handling and loading said roof beams after completion" on the contractors' trucks; and that the "function" of the pipe company "was limited to per-forming labor" for the contractors "in aiding in perform-ance" of their contract with the highway department. The tax collected on these services totaled $2,540.66 and is the amount which the contractors seek to recover. From a judg-

ment of the superior court allowing recovery, the state appeals.

■ The state, in its contention that the only question involved is whether the contractors should "be allowed to segregate out of the total selling price the labor costs involved in manufacturing the article and pay the tax solely on the value or selling price of the materials," oversimplifies the problem. Its argument that the contractors owed a three per cent retail sales tax on the amount paid by them to the pipe company for labor and mechanical services in the construction of the beams is untenable under the facts as stipulated. Nobody sold the contractors any beams, and, while there was a cost to the contractors, there never was a "selling price" from which to segregate the labor costs. The stipulations preclude any contention that there was, as between the pipe company and the contractors, any transfer of ownership to a given article for a valuable consideration. Laws of 1949 (chapter 228, § 2(c), p. 817) (Rem. Supp. 1949, § 8370-5(c)).

Although the state tax commission specifically disclaimed any theory that a retail sales tax was involved, the attorney general relies upon § 2(d) of chapter 228, Laws of 1949, p. 818 (Rem. Supp. 1949, § 8370-5(d)), defining a "sale at retail" as including labor and services rendered in "the installing, repairing, cleaning, altering, imprinting or improving of tangible personal property of or for consumers, . . ." The mixing and pouring of concrete and the placing of reinforcing steel rods therein and forming therefrom a custom-made precast reinforced concrete roof beam amounts to much more than the "altering . . . or improving of tangible personal property," as claimed by the state.

■ However, the state also urges that the amount paid to the pipe company for labor and mechanical services in making the beams is subject to the use tax. That tax is imposed

". . . for the privilege of using within this state as a consumer any article of tangible personal property purchased at retail . . . or produced or *manufactured by*

*the person so using the same:* . . . " (Italics ours.) Laws of 1949, chapter 228, § 7, p. 829 (Rem. Supp. 1949, § 8370-31).

It is further provided that the tax

" . . . shall be levied and collected in an amount equal to the value of the article used by the taxpayer multiplied by the rate of three per cent." Laws of 1949, chapter 228, § 7, p. 830 (Rem. Supp. 1949, § 8370-31).

The contractors make no contention that the amount paid to the pipe company for the labor and mechanical services furnished by it is not taxable as part of the value of the beams if the use tax is applicable to the transaction; and they make no contention that any distinction is to be drawn because they engaged the pipe company to do the actual work of making the beams instead of doing it themselves. In any event, the definition of "manufacturer" would remove any doubt on that score. It reads:

"The word 'manufacturer' means every person who, either directly or *by contracting with others for the necessary labor or mechanical services,* manufactures for sale or for commercial or industrial use *from his own materials or ingredients* any articles, substances or commodities. . . ." (Italics ours.) Laws of 1949, chapter 228, § 2(j), p. 820, made applicable to the use tax by reference in § 9(e) thereof, p. 833 (Rem. Supp. 1949, §§ 8370-5(j), 8370-35(e)).

The contractors do contend that the use tax is not applicable to the transaction. They base their argument squarely upon the propositions that the beams were not "new, different or useful article[s] of tangible personal property" and that the contractors were not consumers of the beams but only of the materials which went into them. They rely upon the definition of "to manufacture," which includes

" . . . all activities of a commercial or industrial nature wherein labor or skill is applied, by hand or machinery, to materials so that as a result thereof *a new, different or useful article of tangible personal property* or substance of trade or commerce is produced and shall include *the production or fabrication of special made or custom made articles;* . . . " (Italics ours. )

and the definition of "consumer":

"Any person engaged in the business of contracting for the

building, repairing or improving of any publicly owned street, place, road, highway, bridge or trestle which is used or to be used primarily for . . . vehicular traffic, in respect, however, only to *tangible personal property used or consumed* in such business; . . . " (Italics ours.) Laws of 1949, chapter 228, § 2, subds. (k), (r)(3), ps. 820, 822, made applicable to the use tax by reference in § 9(e) thereof, p. 833 (Rem. Supp. 1949, §§ 8370-5, subds. (k), (r)(3), 8370-35(e)).

It is stipulated that the beams were made according to the specifications of the highway department for the two snowsheds and "had reference only to" those particular snowsheds, and that the beams were not standard items of commerce. However, the fact that they had no value except for that particular use does not prevent their being "new, different or useful article[s] of tangible personal property." The legislature specifically included specially made and custom-made articles.

It seems to us that the seven hundred twenty beams called for by the contract were "tangible personal property used or consumed" in the construction of the snowsheds. If the intention of the legislature was not to tax prefabricated articles of tangible personal property of various kinds to be used in public highway (including bridge) construction, but only the materials which go into them, as argued by the contractors, the then-applicable legislation (and that enacted more recently) does not make that intention clear.

The judgment is reversed, with instructions to enter a judgment of dismissal.

HAMLEY, C. J., FINLEY, WEAVER, and ROSELLINI, JJ., concur.