[No. 35911.  Department Two.  June 28, 1962.]

BORNSTEIN SEA FOODS, INC., *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.**

*Reported in 373 P. (2d) 483.

*Jack Kurtz*, for appellant.

*The Attorney General* and *James A. Furber, Assistant*, for respondent.

FINLEY, C. J.—In this case the state tax commission has determined that certain activities of the appellant, Bornstein Sea Foods, Inc. (the taxpayer), are included within the term "to manufacture," and are taxable under the business and occupation taxing statutes of this state. On the taxpayer's appeal to the superior court, the tax imposed by the commission was upheld, and judgment was entered for the state of Washington in the amount of $5,859.18 (together with interest allowable by law and costs). The taxpayer has appealed.

The activities taxed by the commission involve filleting, packaging, and freezing of fish. The filleting process is accomplished in the following manner. Appellant purchases varying species of bottom fish, such as cod, perch, sole, and others from fish boats. In appellant's establishment the fish are placed by an employee on an endless rubber belt conveyor. The fish arrive whole in front of other employees, called "filleters." A filleter takes the fish from the conveyor, lays the fish on its side, and with a special knife makes a diagonal cut across the fish behind the head. The knife is then inserted at the initial cut and moved along the back-

bone of the fish, separating the flesh from the skin. The same process is repeated on the other side of the fish. The fillets (sides of fish) are then cut into appropriate sized pieces, and approximately sixty-five per cent of the total production is packaged in one-pound units and frozen for eventual shipping and sale. The remaining fillets are placed in large tins, iced, and sold on the wholesale fresh fish market. The remains of the fish are saved and marketed as "mink" or "pet" food. There is no evidence in the record relating to the details of the packaging and freezing operation.

RCW 82.04.110 defines a "manufacturer" as follows:

" 'Manufacturer' means every person who, either directly or by contracting with others for the necessary labor or mechanical services, manufactures for sale or for commercial or industrial use from his own materials or ingredients any articles, substances or commodities. When the owner of equipment or facilities furnishes, or sells to the customer prior to manufacture, all or a portion of the materials that become a part or whole of the manufactured article, the tax commission shall prescribe equitable rules for determining tax liability."

And RCW 82.04.120 defines the term "to manufacture" in the following manner:

" 'To manufacture' embraces all activities of a commercial or industrial nature wherein labor or skill is applied, by hand or machinery, to materials so that as a result thereof a new, different or useful substance or article of tangible personal property is produced for sale or commercial or industrial use, and shall include the production or fabrication of special made or custom made articles."

The statutory provision levying the tax is found in RCW 82.04.220.

It is pertinent that Rule 136 of the tax commission implements the term "to manufacture." After a recitation of the statutory definition, Rule 136 provides:

" . . . [To manufacture] means the business of producing articles for sale, or for commercial or industrial use from raw materials or prepared materials by giving these matters new forms, qualities, properties, or combina-

tions. It includes such activities as making, fabricating, processing, refining, mixing, slaughtering, packing, curing, aging, canning, etc. It includes also the preparing, packaging and freezing of fresh fruits, vegetables, fish, meats and other food products, the making of custom made suits, dresses, and coats, and also awnings, blinds, boats, curtains, draperies, rugs, and tanks, and other articles constructed or made to order. . . .

"The term 'to manufacture' does not include activities which are merely incidental to non-manufacturing activities. Thus, the following do not constitute manufacturing: washing and screening of coal, or the bucking and yarding of logs, by the extractors thereof; pasteurizing and bottling of milk by a dairy; cooking and serving of food by a restaurant; the mere cleaning and freezing of whole fish; repairing and reconditioning of tangible personal property for others, etc. . . ."

At a hearing held before the tax commission, appellant contended that the previously described process amounted to nothing more than a "mere cleaning of whole fish," and that the activity was, therefore, excluded from taxation as "manufacturing" by virtue of the tax commission's own definition of "to manufacture," reflected in Rule 136. The tax commission ruled, however, that the portion of the rule relied upon by appellant dealt with activities which are merely incidental to nonmanufacturing activities. The commission held that the filleting process herein involved was incidental to a manufacturing activity because the end product is new and different. Hence, the commission found that the exclusion in Rule 136, relating to "the mere cleaning and freezing of whole fish," is inapplicable. Subsequently, an implementing letter was sent to the appellant (which, by its terms, was incorporated into the tax commission's prior ruling with respect to appellant's contentions), indicating a determination that those who purchase fillets in prepared form and place them in packages and freeze them, absent any other form of preparing or processing, are not engaged in a manufacturing activity within the statutory definition.

The basic question presented in this appeal is whether the appellant's activities, as previously described, fall

within the definition of "to manufacture" within the context of the business and occupation tax statutes. Or, to put it another way, do the appellant's activities result in the production of new, different, or useful articles of trade or commerce?

The term "to manufacture," or in the broader context the activity of "manufacturing," usually connotes a creative type of enterprise where various elements or component parts are assembled or fabricated to make a new and different article. That was the position of this court in *Crown Zellerbach Corp. v. State* (1958), 53 Wn. (2d) 813, 328 P. (2d) 884, where reliance was placed on a dictionary definition of "manufacturing" to dispose of the problem there at hand. That definition is:

" 'To make (wares or other products) by hand, by machinery, or by other agency; . . .
" 'To work, as raw or partly wrought materials, into suitable forms for use; . . .
" 'To fabricate; to invent; also, to produce mechanically.' "

The statutory definitions of "manufacture" and "to manufacture" reflect this commonly understood and accepted version of the term "manufacturing." There is, however, another facet of the statutory definition of "manufacturing" which tends to broaden the scope of the term. We are referring to the phrase, "so that as a result [of application of labor or skill] a new, different or useful substance or article of tangible personal property is produced. . . ." The tax commission, by virtue of Rule 136, has effectively utilized this language to include in the concept of "manufacturing" not only activities of the type which connote creative assembling of elements in the sense of fabrication, but also activities encompassing preparation and processing in the sense of treatment or handling as "curing, aging, canning, etc." and "preparing, packaging and freezing." In short, we have come to the position now where we are classifying as "manufacturing" activities which realistically are not manufacturing in the ordinary sense at all.

No criticism of the tax commission is intended for the

definition it has promulgated and the position taken by the commission. Indeed, criticizing the action of the commission would be inconsistent with the opinion in *Stokely-Van Camp v. State* (1957), 50 Wn. (2d) 492, 312 P. (2d) 816. That case not only held that the term, "to manufacture," included certain processes with respect to food, but it also, more or less, gave approval and sanction to the tax commission's Rule 136. The purpose of this particular discussion is to call attention to the conceptual difficulty involved when it becomes necessary to determine whether or not certain processing activities with respect to foods constitute "manufacturing." It may well be that the legislature could utilize more amenable or realistic means, nomenclature or classification respecting those affected by the taxes it imposes, so that the commission and the courts might be relieved of the burden of making awkward applications of statutory terminology to cover seemingly inconsistent or incongruous subject matter.

Appellant's primary contention is that the process of filleting is akin to the process of cleaning or removing the inedible portions from a fish that is marketed whole. Appellant argues that the method used for separating the edible portion from the waste (that is, whether the waste is removed from the fish, as in the ordinary cleaning process, or whether the fish is removed from the waste, as in the filleting process) is unimportant, since all that is accomplished is a cleaning of the fish. The tax commission, on the other hand, emphasizes that appellant's process is directed toward the purpose of producing fillets, not cleaning fish; and that a fillet, once produced, is different from a fish, and hence a new and different article has been created. Appellant, contrariwise, points out that the article at the end of the process is unchanged, and that in the end it is still fish—in the form of fillets.

The tax commission resolved this problem by characterizing the filleting process as incidental to a manufacturing activity and, therefore, outside of the scope of the exclusion in Rule 136.

We are not convinced that the tax commission's ruling presents an altogether satisfactory solution to the problem. The question is unanswered as to just what manufacturing activity the filleting process is incidental. The implementing letter indicates that the activity of packing and freezing is not considered "manufacturing" by the tax commission. It would then appear that filleting should be considered incidental to a nonmanufacturing activity and within the exclusionary portion of Rule 136, if the tax commission's implementing letter is to be given any effect.

We propose to resolve this difficulty by looking at the total process accomplished by the appellant in relation to the statutory definition and prior case law. We think the test that should be applied to determine whether a new, different, and useful article has been produced is whether a significant change has been accomplished when the end product is compared with the article before it was subjected to the process. By the end product we mean the product as it appears at the time it is sold or released by the one performing the process.

A manufacturer's tax cannot be imposed on a nonmanufacturing activity merely because the taxpayer also engages in a separate manufacturing activity which is subject to the tax. Cf. *Buffelen Lbr. & Mfg. Co. v. State* (1948), 32 Wn. (2d) 40, 200 P. (2d) 509. It is therefore necessary to distinguish between that portion of appellant's production that is packaged and frozen and delivered to the market and that portion of appellant's production that is iced, placed in tins, and sold on the fresh market. Since two distinct end products result, appellant is engaged in two separate activities. Both must measure up to the standard of manufacturing, or the tax amount imposed by the tax commission cannot be sustained.

In our judgment there is clearly a significant difference between that portion of appellant's production which winds up frozen in package form and the whole fresh fish placed on the conveyor belt en route to the filleter. This conclusion is in accord with the reasoning and holding of the *Stokely-Van Camp* case, *supra*, and consistent with

*J. & J. Dunbar & Co. v. State* (1952), 40 Wn. (2d) 763, 245 P. (2d) 1164, and *Drury the Tailor v. Jenner* (1942), 12 Wn. (2d) 508, 122 P. (2d) 493.

Appellant attaches much significance to the fact that the taxpayer in the *Stokely-Van Camp* case, who was engaged in the business of preparing fresh fruits and vegetables for packaging and freezing, made use of a process called *blanching*. Blanching, in the frozen food industry, is a process whereby items are partially cooked to inactivate certain enzymes for the purpose of maintaining natural flavors and preserving the food longer in a frozen state. Appellant attempts to distinguish the freezing process accomplished herein from that utilized in the *Stokely-Van Camp* case by characterizing blanching as the introduction of an artificial element which changes the form of the product. In so doing, appellant has over-emphasized the importance of the blanching process in the *Stokely-Van Camp* case. There the court was concerned with the question as to whether the end product was a new, different, and useful article of trade or commerce as compared with the article brought to the taxpayer's plant in its raw state. The introduction of the blanching process was not a focal point of the decision. Rather, the decision was grounded upon the change in form from fresh to frozen and the fact that the end product was made more usable because of its frozen state. The fact that the blanching process is lacking here does not prevent the *Stokely-Van Camp* case from being authoritative with respect to the question whether the process of preparing, packaging, and freezing accomplishes a significant change in an article to classify it as "manufactured," and a new, different, and useful article of trade or commerce.

A closer question is presented with respect to that portion of appellant's production that is filleted, iced, and placed in tins for shipment to the fresh market.

It is true, as appellant contends, that after the filleting process is accomplished the end product is fish in fillet form. In the *Stokely-Van Camp* case, however, the taxpayer performed a process on peas (and other vegetables

and fruits), and, after the process, he still had peas. In *Drury The Tailor v. Jenner, supra,* a tailor transformed a bolt of cloth into a suit; the end product was still cloth, in the form of a suit. In *J. & J. Dunbar & Co. v. State, supra,* the taxpayer removed impurities from whiskey. The end product was whiskey. The crucial point in each of these cases was the fact that the activities of the taxpayer changed a product to make it more usable. The process of filleting transforms near valueless whole bottom fish into useful and salable consumer items. This change is significant. The fact that the end product is still fish does not mean that the end product is not new and different after the process of filleting is accomplished.

Appellant also contends that imposition of the tax on filleters is discriminatory, since those who clean fish in the conventional manner and those who purchase fillets and package and freeze them are not taxed. The answer to this contention is that the tax applies to those who perform a manufacturing process. Whether or not those who clean fish by other methods, or those who purchase fillets and then package and freeze them, accomplish a manufacturing process is outside the scope of this case. We express no opinion as to whether these activities constitute manufacturing. The tax is not discriminatory, because it applies uniformly to all who fillet fish. In our view, those who perform the filleting process not only clean but change the form of a whole fish significantly and, thereby, accomplish by a "manufacturing" process the production of a new, different, and useful article of trade or commerce.

Finally, appellant contends that its operation is just as much a "non-manufacturing" activity as that of "washing and screening coal" or "pasteurizing and bottling milk by a dairy," for example, which by the terms of Rule 136 are excluded from taxation as "manufacturing." The tax commission has operated under Rule 136 since July 1, 1956. The legislature has not yet seen fit to repudiate the construction that the tax commission has given the particular statutory provisions. While we agree with the appellant that the distinctions made between various

processes leaves something to be desired, we do not think it the function of the court to attempt to "out administer" an administrative body. The tax commission has made an effort to bring some order to a confused area. If the effort falls short, it is because of lack of direction by the legislature and the problem of semantics alluded to in our earlier remarks. Our function is not to decide whether Rule 136 is accurate or perfect in every detail, but to determine whether or not appellant's activities constitute "manufacturing" under the applicable statutes and prior case law. This we have done.

The trial court should be and is hereby affirmed.

HILL, DONWORTH, and OTT, JJ., concur.

FOSTER, J., dissents.

August 20, 1962. Petition for rehearing denied.