[No. 37588. Department Two. August 19, 1965.]

PIERCE COUNTY, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.**

*John G. McCutcheon* and *Keith D. McGoffin,* for appellant.

*The Attorney General, Henry W. Wager* and *James A. Furber, Assistants,* for respondents.

RYAN, J.†—This is an appeal from a judgment in favor of the respondents which provided that the appellant is liable for payment of retail sales tax. The facts of the case are simple. It was heard in the trial court on an agreed stipulation of facts.

The appellant, Pierce County, after calling for public bids, awarded contracts in 1960 and in 1961 to the respondent Cascade Asphalt Paving Company (hereinafter called

*Reported in 404 P.2d 1002.

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pusuant to Art. 4, § 2(a) (amendment 38), state constitution.

Cascade), for the crushing and stockpiling of rock in a number of gravel pits situated in Pierce County. These pits were the property of the county and all gravel produced from them was used on county roads except for 3.03787 per cent in 1960, which was sold, at cost, to municipalities in Pierce County for road purposes as permitted by statute. RCW 36.82.100. The contracts did not specify the roads upon which the rock would ultimately be placed and did not require stockpiling on or next to the right of way of the road being built or repaired.

On June 9, 1960, the respondent State of Washington, through the Tax Commission, advised the appellant it would be required to pay retail sales tax on these contracts. On December 28, 1960, the Tax Commission abandoned the position it had taken earlier and informed the appellant that it would not be liable for payment of sales tax, but that Cascade would be assessed the compensation (use) tax, as a consumer engaged in public road construction or repair. Following this ruling, Cascade petitioned the Tax Commission for refund and, on October 16, 1962, the commission again reversed itself and held the appellant liable for payment of retail sales tax. The trial court approved this ruling and the appellant Pierce County instituted this present appeal.

It is our opinion that the contracts here involved fall within an exemption of the retail sales tax and the judgment must be reversed.

RCW 82.04.050 provides in part as follows:

> The term "sale at retail" or "retail sale" shall include the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: (a) The installing, repairing, cleaning, altering, imprinting, or improving of tangible personal property of or for consumers . . . .
>
> . . . .
>
> The term shall not include the sale of or charge made for labor and services rendered in respect to the building, repairing, or improving of any publicly owned street, place, road, highway, bridge, or trestle which is used or to be used primarily for foot or vehicular traffic . . . .

The gravel pits were owned by Pierce County and the gravel extracted was at all times the property of the county, so we are not concerned with a sale of "tangible personal property consumed" but rather with a charge made for "labor and services rendered." Such labor and services were performed at least in the "altering" and "improving" of tangible personal property, but were clearly in respect to the "building, repairing or improving" of publicly owned streets, places, roads or highways. The statute last cited specifically excludes such services from the terms "sale at retail" or "retail sale."

The respondents urge that only if gravel is stockpiled on the right of way where it is to be used, can the processing be deemed a road building activity. This is a distinction without a difference. The gravel pits and the roads were owned by either the county or the political subdivisions within the county. They were all parts of a connected chain and whether the stockpiles were in one place or another can make no difference. In fact, the county acted wisely in avoiding unsightly gravel piles along all of its roads and in eliminating the necessity of extensive hauling before it could have been known where the material would be needed.

The Tax Commission appears to be troubled in determining if the crushed rock was actually used in respect to publicly owned streets, places, roads, or highways. However, the payments were made to Cascade under the authority granted the county by RCW 36.82.070, which restricts the use of county road fund monies to road purposes and the trial court found, as the evidence conclusively proved, that the gravel was used as asserted by appellant.

The question with which we are faced is a new one in this state and this case stands alone and without precedent. The only other decision bearing any possible resemblance to the case at bar is *Wilder Co. v. State,* 48 Wn.2d 834, 297 P.2d 241, which is the only case cited by either counsel. In the *Wilder* case, we held that labor performed by a subcontractor in constructing reinforced concrete beams for the contractor was not a retail sale. All materials used were

owned by the contractor, the subcontractor furnishing only labor and mechanical services. We concluded that, because of the character of the work performed, this was manufacturing and subject to use tax. However, in the present case, the labor and services rendered did constitute a retail sale, but it was subject to the exclusion from tax provided by statute. The *Wilder* case is therefore distinguishable, although some statements contained in it would seem to lend weight to the contentions of the appellant.

We recognize that great weight is to be given to rules promulgated by the Tax Commission in determining the meaning of taxing laws. But such regulations cannot amend or modify the statute in question. *Fisher Flouring Mills Co. v. State,* 35 Wn.2d 482, 213 P.2d 938; *Stokely-Van-Camp, Inc. v. State,* 50 Wn.2d 492, 312 P.2d 816. The regulation with which we are here concerned is tacitly admitted by respondent to be one of expediency and convenience. We cannot accept it in the face of the statute, the meaning of which is clear and certain.

The judgment of the trial court is reversed.

ROSELLINI, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.