[Nos. 16906-5-III; 16960-0-III.   Division Three.   July 28, 1998.]

VALLEY FRUIT, *Respondent*, v. THE DEPARTMENT OF
REVENUE, *Appellant*.

DOUGLAS FRUIT COMPANY, INC., ET AL., *Respondents*, v.
THE DEPARTMENT OF REVENUE, *Appellant*.

414

*Christine O. Gregoire, Attorney General*, and *John G. Hennen* and *Leland T. Johnson, Assistants*, for appellant.

*Walter G. Meyer, Jr.,* and *Jeffrey M. Kreutz* of *Meyer, Fluegge & Tenney,* for respondents.

KATO, J. — Valley Fruit and Douglas Fruit applied for a sales and use tax exemption. The Department of Revenue denied both applications; the Board of Tax Appeals upheld the denials. In separate actions, the Yakima County Superior Court and the Franklin County Superior Court reversed the Board of Tax Appeals and granted summary judgment in favor of the fruit companies. The Department of Revenue appeals. We affirm.

Douglas Fruit and Valley Fruit (referred to as the "fruit companies") constructed apple packing and storage facilities. The apple packing process begins with whole, edible apples which are sized, graded, cleaned, waxed, packaged, and cooled. The apples are treated with fungicide, brushed clean of mineral deposits, rinsed, waxed and dried. The apples are then sorted by color and size and placed in a container where each apple receives a coded sticker. The apples are packed by hand into boxes and placed in cold storage until shipped. Depending on the shipping date, the apples may be placed in a controlled atmosphere where the oxygen is removed from the air to help preservation. The apples do not change form as a result of the packing process.

In September 1994, the fruit companies applied for a distressed area sales and use tax deferral under RCW 82.60. RCW 82.60 grants a sales and use tax exemption for manufacturing activities in distressed areas. In October 1994, the Department of Revenue denied the applications.

The fruit companies appealed to the Department's Interpretation and Appeals Division which affirmed the denial. They then appealed to the Board of Tax Appeals (BTA), which again affirmed the denial of the applications.

The fruit companies each sought judicial review of the BTA decision under the Administrative Procedure Act. Claiming they were entitled to the deferral as a matter of law, they moved for summary judgment. Both courts granted summary judgment to the fruit companies. The Department's appeals of the orders have been consolidated.

■ Judicial review of agency orders is governed by RCW 34.05.570(3). *Callecod v. State Patrol*, 84 Wn. App. 663, 670, 929 P.2d 510, *review denied*, 132 Wn.2d 1004 (1997). A reviewing court may reverse an agency decision when (1) the decision is based upon an error of law; (2) the decision is not based upon substantial evidence; or (3) the decision is arbitrary and capricious. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

■■ The fruit companies appealed the BTA's final decision, claiming their activities qualified as manufacturing under the statute. Construction of a statute is a question of law reviewed under the error of law standard. *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624, 87 A.L.R.4TH 627 (1989). When applying the error of law standard, the court may substitute its own judgment for that of the agency, although it must give substantial weight to the agency's view of the law it administers. *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 407, 914 P.2d 750 (1996).

The Department argues the superior courts applied the wrong standard of review because both courts substituted their judgment for that of the agency. A court is permitted to substitute its own legal judgment. *Id.* The trial courts' orders of summary judgment simply indicated that under the facts presented to the agency, the fruit companies were entitled to the deferral as a matter of law. Although the courts appeared to consider evidence in the agency rec-

ord not reflected in any of the findings of fact, they nevertheless based their decisions on the uncontroverted evidence before the BTA. The courts did not misapply the proper standard of review.

■ ■ But at any rate the standard of review applied by the trial court is irrelevant. An appellate court sits in the same position as the superior court when reviewing an agency action. *Tapper,* 122 Wn.2d at 402. Our review of the BTA's action is based upon its record, not that of the superior court. *Inland Empire,* 112 Wn.2d at 282. We thus consider the issue de novo and will look to the BTA record to determine if, based on those facts, the fruit companies were entitled to a tax deferral.

■ The Department further claims the fruit companies' operations did not constitute manufacturing so they were not entitled to a tax deferral under RCW 82.60. To determine if they are entitled to a tax deferral, this court must engage in statutory construction. Statutes exempting persons or property from taxation are to be strictly construed. *Pacific N.W. Conference of the Free Methodist Church v. Barlow,* 77 Wn.2d 487, 492, 463 P.2d 626 (1969), *overruled on other grounds in Corporation of the Catholic Archbishop v. Johnston,* 89 Wn.2d 505, 509, 573 P.2d 793 (1978). Moreover, exemptions should not be extended by judicial construction other than as expressly designated by law. *Pacific N.W. Conference,* 77 Wn.2d at 492.

■ RCW 82.60.040(1) grants a sales and use tax deferral to any eligible investment project. One requirement of an eligible investment project is the ownership of a qualified building. RCW 82.60.020(4)(b). Qualified buildings are those which are used for manufacturing. RCW 82.60.020(8). RCW 82.60.020(6) defines manufacturing as:

[A]ll activities of a commercial or industrial nature wherein labor or skill is applied, by hand or machinery, to materials so that as a result thereof a new, different, or useful substance or article of tangible personal property is produced for sale or commercial or industrial use and shall include the production

or fabrication of specially made or custom made articles. "Manufacturing" also includes computer programming, the production of computer software, and other computer-related services, and the activities performed by research and development laboratories and commercial testing laboratories.

The WASHINGTON ADMINISTRATIVE CODE (WAC) states that for purposes of RCW 82.60, manufacturing has the definition used in RCW 82.04.110 and WAC 458-20-136. WAC 458-20--24001(3)(j). The WAC directs the Department to use these definitions in administering RCW 82.60. WAC 458-20--24001(3)(j). The WAC includes in the definition of manufacturing the preparing, packaging, and freezing of fresh fruits and vegetables. WAC 458-20-136(1).

The key is whether the fruit companies' activities at the packing and storage facilities make the apples a new, different, or useful product. To make this determination, prior case law considering whether particular activities constituted manufacturing for purposes of the business and occupation (B&O) tax provide guidance.

In the first of these cases, the court was asked to consider whether the processing of whiskey constituted manufacturing for purposes of assessing the B&O tax. *J&J Dunbar & Co. v. State*, 40 Wn.2d 763, 245 P.2d 1164 (1952). The court determined the definition of manufacturing in the state liquor act was unambiguous and concluded the processed whiskey was a different and useful substance of commerce from the nonusable whiskey that entered the process. *Id.* at 765-66. The court accordingly deemed the process manufacturing. *Id.*

Courts have also determined that the process of preparing, packing, and freezing fresh fruit and vegetables constituted manufacturing for purposes of the B&O tax. *Stokely-Van Camp, Inc. v. State*, 50 Wn.2d 492, 500, 312 P.2d 816 (1957). The filleting, packaging, and freezing of fish is also manufacturing. *Bornstein Sea Foods, Inc. v. State*, 60 Wn.2d 169, 177, 373 P.2d 483 (1962). In *Bornstein*, the court looked at the total process used by the taxpayer to determine if the process was manufacturing. It concluded the test to

determine if a product was new, different, or useful was whether a significant change had been accomplished when the end product was compared with the article before it was subjected to the process. *Id.* at 175. The crucial point was whether the process made the product more usable. *Id.* at 177. The fact that both the beginning product and end product was fish did not mean the end product was not new and different. *Id.* This test was used to determine that the processing of coffee beans was manufacturing. *Continental Coffee Co. v. State*, 62 Wn.2d 829, 832, 384 P.2d 862 (1963). The preparation and processing of split peas was also manufacturing. *McDonnell & McDonnell v. State*, 62 Wn.2d 553, 556-57, 383 P.2d 905 (1963).

■ Both parties refer in their briefs to *Custom Apple Packers Quincy, Inc. v. Department of Revenue*, 11 WTD 289 (1991), a published decision from the Board of Tax Appeals. There, the BTA denied Custom Apple's request for a sales and use tax deferral for the construction of its apple processing and packing plant. Considering Washington case law in denying the request, the BTA nevertheless determined that the apple was not a new product. It acknowledged the product was useful and perhaps different, but not new. However, this is not the law and the Board's decision is not binding on this court in any event.

■ The fruit companies start with whole, edible apples which are treated with fungicide and brushed clean of mineral deposits. They are then rinsed, waxed, and dried. After they are sorted, the apples are stored in a controlled atmosphere to aid preservation. Although not included in the BTA's findings of fact, the uncontroverted evidence before it indicated the apples have a longer life as a result of this process. Using this process, the fruit companies are able to keep the apples 11 months. Without the processing, the apples would decay within a month. This undisputed testimony indicates the processing significantly changes the apples into a more useful product. Application of the facts presented to the BTA to the law defining manufacturing indicates these activities should be construed as manufacturing.

Affirmed.

KURTZ, A.C.J., and SWEENEY, J., concur.

Review denied at 137 Wn.2d 1017 (1999).