[No. 35304.   Department Two.   September 22, 1960.]

STANDARD OIL COMPANY OF CALIFORNIA, *Respondent,* v. THE
STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 355 P. (2d) 349.

*The Attorney General, John W. Riley, Deputy, James A. Furber* and *Timothy R. Malone, Assistants,* for appellant.

*Helsell, Paul, Fetterman, Todd & Hokanson,* for respondent.

ROSELLINI, J.—The plaintiff in this action seeks to recover certain taxes which it has paid to the defendant state under protest. The taxes were levied and collected under the authority of RCW 82.04.270, which imposes a business and occupation tax upon what are known as "wholesale functions." Insofar as it is applicable in this case, that section provides:

"(2) The tax imposed by this section is levied and shall be collected from every person engaged in the business of distributing in this state articles of tangible personal property, owned by them from their own warehouse or other central location in this state to two or more of their own retail stores or outlets, where no change of title or ownership occurs, the intent hereof being to impose a tax equal to the wholesaler's tax upon persons performing functions essentially comparable to those of a wholesaler, but not actually making sales: *Provided,* That the tax designated in this section may not be assessed twice to the same person for the same article. . . . *Provided further,* That delivery trucks or vans will not under the purposes of this section be considered to be retail stores or outlets. [1959 1st ex.s. c 5 § 3 . . . ]"

The plaintiff brings its products into this state by various means of transportation and deposits them at terminal storage plants, from which they are thereafter distributed to some one hundred fifty-two bulk stations or plants within the state. These plants consist of storage and warehouse facilities, with overhead lines for filling trucks, and small offices used by the employees.

During the period involved in this suit, 58.2 per cent of the dollar value of products handled by bulk plants was sold or transferred for resale to retail service stations, dealers, jobbers and cooperatives. The wholesale tax on these transfers was paid without protest.

The remainder of the products were sold at bulk prices

and in bulk quantities for business use to industrial, commercial, and agricultural consumers and to government and marine vessels. The prices were determined according to quantity and were influenced by the competitive prices of other suppliers. Very few sales were made at the bulk plants, and customers were not encouraged to visit the plants. Deliveries were made by tank trucks belonging to the plaintiff, and a sale was considered completed at the time of delivery.

Retail sales taxes, imposed under RCW 82.04.250, were paid on the latter transactions. It was the theory of the tax commission, in levying the taxes in question, that to the extent that retail sales were made from the bulk plants, they were "retail stores or outlets" within the meaning of RCW 82.04.270(2), and that the transfer of the plaintiff's products from its terminals to its bulk plants, to the extent that those products were later sold directly to consumers, was a wholesale function within the meaning of that statute.

In challenging this determination in the superior court, the plaintiff contended that the term "retail store or outlet" was intended to have its common and ordinary meaning, and that establishments which sell in large bulk quantities for business uses do not come within that meaning. The court sustained its position and ordered a refund of the taxes involved.

The Legislature has defined the term "retail sale" for purposes of the business and occupation tax statute. RCW 82.04.010 provides:

"For the purposes of this chapter [which includes RCW 82.04.270] unless otherwise required by the context, the terms used herein shall have the meaning given to them in RCW 82.04.020 through 82.04.210. [1955 c 389 § 2 . . .]"

We then find this definition, RCW 82.04.050:

" 'Sale at retail' or 'retail sale' means every sale of tangible personal property (including articles produced, fabricated, or imprinted) other than a sale to one who (a) purchases for the purpose of resale as tangible personal property in the regular course of business, or (b) installs, repairs, cleans, alters, imprints, improves, constructs, or

decorates real or personal property of or for consumers, if such tangible personal property becomes an ingredient or component of such real or personal property, or (c) purchases for the purpose of consuming the property purchased in producing for sale a new article of tangible personal property or substance, of which such property becomes an ingredient or component or as a chemical used in processing, when the primary purpose of such chemical is to create a chemical reaction directly through contact with an ingredient of a new article being produced for sale. The term also means every sale of tangible personal property to persons engaged in any business which is taxable under RCW 82.04.280, subsection (2), and 82.04.290. . . . [1959 1st ex.s. c 5 § 2 . . .]."

Further detailed definitions then follow, not pertinent to the issue in the case.

RCW 82.04.060 " 'Sale at wholesale' or 'wholesale sale' means any sale of tangible personal property which is not a sale at retail and means any charge made for labor and services rendered for persons who are not consumers, in respect to real or personal property, if such charge is expressly defined as a retail sale by RCW 82.04.050 when rendered to or for consumers: *Provided,* That the term 'real or personal property' as used in this section shall not include any natural products named in RCW 82.04.100. [1955 1st ex.s. c 10 § 4 . . .]"

A reading of these statutes in their entirety will show that the Legislature was at some pains to insure that a narrow definition of the terms "wholesale sale" and "retail sale" would not be implied, and even went so far as to include labor and services within these definitions. It is also evident that the Legislature intended that every sale should be taxed, unless it was expressly excepted from the operation of the statute. Nowhere do we find in this chapter any indication that only stores which sell packaged articles in small quantities for personal use were to be considered "retail stores or outlets." On the contrary, the broadest language is used. The wholesale sales are defined as all sales not classified as retail sales, that is, not sales to consumers, and the wholesale functions tax is imposed "on every person engaged in the business of dis-

tributing in this state articles of tangible personal property" (except those expressly excluded) who engage in transactions which would constitute sales at wholesale if a transfer of ownership were involved.

The plaintiff makes some contention that the use of the term "articles" indicates that the Legislature had in mind many separate articles or packages such as are distributed by chainstore owners to retail chain stores which deal in merchandise. "Article" is defined in Webster's New Twentieth Century (2d ed.) 1957, Dictionary as "a particular commodity; a thing for sale." A tank of gasoline may be a much larger object than a bottle of hair oil; but we fail to see wherein it is any less an article. We find nothing in the statute to indicate that the Legislature intended to make the incidence of the tax dependent on the size of the article sold.

The plaintiff cites cases which have interpreted the Federal Fair Labor Standards Act and have defined "retail establishment" for the purposes of that act to exclude from that definition outlets such as are involved in this suit, which sell for business use. It is from these cases that the plaintiff's "ordinary meaning" of the term "retail store or outlet" is derived. However, our statute has given the term "retail sale" a much broader definition, including within it all sales for consumption by the purchaser and making no distinction between business and personal use. If such a distinction were intended, as the plaintiff contends, then stores which sell office supplies, tools, store and office furnishings and the like, would be exempt from the tax whether or not they were chain stores. We find no intention expressed or implied in the statute to allow such exemptions.

The meaning ordinarily given to the term "retail sale," where a taxing statute similar to ours is under consideration, is that which the Legislature adopted in this instance—a sale to an ultimate consumer. A few of the recent cases acknowledging the correctness of this definition are *Fritz v. Peck,* 160 Ohio St. 90, 113 N. E. (2d) 627; *Gay v. Canada Dry Bottling Co.* (Fla.) 59 So. (2d) 788;

*Paper Products Co. v. City of Pittsburgh,* 391 Pa. 87, 137 A. (2d) 253; *Market Street R. Co. v. California State Board of Equalization,* 137 Cal. App. (2d) 87, 290 P. (2d). 20; *and Trico Electric Cooperative, Inc. v. State Tax Comm.,* 79 Ariz. 293, 288 P. (2d) 782.

■ It is contended that while the Legislature has defined the term "sale at retail," it has not defined the term "retail store," and therefore it must be assumed that the legislative definition of a retail sale was not intended to affect the meaning of the term "retail store or outlet." The plaintiff is unable to point to anything in the context of RCW 82.04.270 (2) which would indicate that the Legislature had in mind anything other than a place where retail sales are made. It does not deny that the sales made at its bulk plants were retail sales (sales to consumers— taxable under RCW 82.04.250), but endeavors to persuade the court that they were not made from a retail outlet. We are at a loss to understand what a retail outlet is if it is not a place from which retail sales are made, and are unable to find in the statute any suggestion that the Legislature intended another definition.

■ There is also a suggestion that the majority of the sales were expressly exempted from the tax because they were made from delivery trucks. The statute merely states that such trucks will not be considered retail stores or outlets. They have not been treated as such stores or outlets in this instance. It is, of course, the bulk plants which are found to be retail outlets and not the trucks which they use for delivery.

■■ It is argued that the Legislature, in using the phrase "to two or more of its own retail stores or outlets" had in mind that such stores or outlets should be predominantly used for such sales in order to come within the purview of the statute, and that because 58.2 per cent of the sales from the bulk plants were wholesale sales, the plants could not be classed as retail outlets. The tax is not imposed upon the store or outlet, but upon the wholesaling function, that is, the *distribution* to two or more outlets. We see nothing in the statute to indicate that the

Legislature intended to restrict the tax to distributions made to establishments which make more retail sales than wholesale sales. Nor do we subscribe to the plaintiff's theory that the intent could not have been to include establishments which make both types of sales because the tax cannot be computed at the moment of distribution. The inability to compute the tax until it is known what proportion of the products have been sold at retail and what proportion at wholesale in no way prevents the ultimate computation and imposition of the tax. A tax-payer cannot relieve himself of his share of the tax burden by simply conducting his business in such a way as to make its computation difficult.

The plaintiff refers to the principle that administrative interpretation of an act is entitled to considerable weight in construing that act, and suggests that an excise tax division's interpretation of a former act, which was repealed in 1939, is persuasive that its operations are not covered by the present act. The former act did not contain the words "or outlet," and the present act has been consistently construed by the commission as applicable to the distributions made to the plaintiff's bulk plants for sale to consumers. If the act were ambiguous and resort to administrative construction were needed in this instance, the latter interpretation is the one which should command the attention of the court.

There are other theories of similar import which are urged, though less earnestly, by the plaintiff in support of its interpretation of the statute; but we think its attorneys are aware that none of these can survive in the glaring light of the statutory language, and it would serve no useful purpose to prolong this opinion by setting them forth.

Finally, resorting to the rule that a judgment will not be reversed if it can be sustained upon any ground urged before the trial court, the plaintiff proposes that the law in question is forbidden by the United States constitution because it constitutes an undue burden on interstate commerce. The case which it claims to be controlling, is *Standard Oil Co. v. Federal Trade Comm.*, 340 U. S. 231,

95 L. Ed. 239, 71 S. Ct. 240, wherein it was held that temporary storage of oil at dock terminals pending distribution to ultimate customers did not deprive it of its interstate character for purposes of the Robinson-Patman act, regulating price competition. Specifically the court said:

" . . . Such sales [to jobbers in the Detroit area] are well within the jurisdictional requirements of the Act. Any other conclusion would fall short of the recognized purpose of the Robinson-Patman Act to reach the operations of large interstate businesses in competition with small local concerns. Such temporary storage of the gasoline as occurs within the Detroit area does not deprive the gasoline of its interstate character."

It will be seen that the court in that case did not say that the oil had gained no intrastate character, but simply said that it had not been deprived of its interstate character for purposes of the act. It is well settled that an activity may be related to interstate commerce and at the same time be subject to state taxation. The applicable principle is clearly stated in *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U. S. 157, 98 L. Ed. 583, 74 S. Ct. 396, as follows:

" . . . Numerous cases have upheld state levies where it is thought that the tax does not operate to discriminate against commerce or unduly burden it either directly or by the possibility of multiple taxation resulting from other taxes of the same sort being imposed by other states. The recurring problem is to resolve a conflict between the Constitution's mandate that trade between the states be permitted to flow freely without unnecessary obstruction from any source, and the state's rightful desire to require that interstate business bear its proper share of the costs of local government in return for benefits received. . . . It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. [citing cases]. And if a genuine separation of the taxed local activity from the interstate process is impossible, it is more likely that other states through which the commerce passes or into which it flows can with equal right impose a similar levy on the

goods, with the net effect of prejudicing or unduly burdening commerce."

The court in that case found that the tax in question was imposed on the taking of gas into the pipeline, which activity could not be separated from the transmission of it in interstate commerce. Quoting from *United Fuel Gas Co. v. Hallanan,* 257 U. S. 277, 66 L. Ed. 234, 42 S. Ct. 105, it said:

" 'There is no break, no period of deliberation, but a steady flow ending as contemplated from the beginning beyond the state line.' "

We think it clear beyond question that the test, when applied to the activity subjected to taxation in this case, reveals that no undue burden on interstate commerce is imposed. In the last cited case, the tax was imposed upon the movement of the gas into interstate commerce. Here, the interstate journey of the petroleum products ends when the products are deposited at the terminal storage plants. The transfer of these products to bulk plants for distribution to ultimate consumers or retail dealers is not an activity which is duplicated in any other state; therefore no other state can with equal right impose a similar tax. And a practical separation from interstate commerce takes place when the products leave the terminals, if not when they are deposited there. Thereafter they are subject to the taxing power of the state.

The judgment is reversed.

HILL, FINLEY, FOSTER, and HUNTER, JJ., concur.

---

December 5, 1960. Petition for rehearing denied.