[No. 40442.   En Banc.   September 10, 1970.]

AIR-MAC, INC., *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*\*

*Williams & Poll,* by *Harvey S. Poll* and *Earl P. Lasher, III,* for appellant.

\*Reported in 474 P.2d 261.

*The Attorney General, Henry W. Wager* and *Timothy R. Malone, Assistants,* for respondent.

STAFFORD, J.—The Washington State Tax Commission assessed Air-Mac, Inc., of Washington for business and occupation taxes plus interest accrued between January 1958 and December 31, 1961. Air-Mac appeals from a judgment of the trial court that affirmed the assessment.

Air-Mac concedes the following findings of fact by the trial court are correct.

Finding of fact 1:

> [Air-Mac] is a Washington corporation doing business within this state and other states as a machinery dealer selling material handling equipment such as fork lifts and conveyors, construction equipment such as Michigan loaders, power shovels, back hoes, etc., and logging equipment; . . . Air-Mac generally sells at retail but an occasional wholesale sale is made to a customer.

Finding of fact 2:

> Air-Mac has three sales outlets located at Seattle, Yakima and Spokane, the latter serving eastern Washington, Idaho and Montana; . . . each sales outlet has office space, a sales yard and floor, and a repair shop; . . . each location maintains an inventory of equipment and parts with the type and kind of inventory at each location being partially dependent upon the type of industry which is located in the office area; . . . Air-Mac sells both new and used equipment, the former being ordered by the individual location and generally delivered by the factory directly to the location ordering the same or its customer.

Finding of fact 3:

> [T]he executive and accounting arms of Air-Mac are situated in Seattle, and because it enjoys the greatest population, the sales and inventory are greater than the other two locations, with Spokane second and Yakima third; . . . Air-Mac does not stock inventory in Seattle, except as may be stated herein, which is intended for other locations, nor is inventory intentionally stocked by the Yakima or Spokane offices for the benefit of any of the other locations; . . . other than as described herein Air-Mac maintains no warehouse which serves as

a distribution center to the other locations for equipment or parts.

Finding of fact 4:

> [T]here is a constant transfer of parts as well as equipment between the various locations, and in the event Spokane has a piece of equipment for which Seattle has an actual or potential customer, the equipment may be shipped to Seattle to demonstrate to the customer.

Finding of fact 5:

> [T]he state tax commission has assessed the wholesale functions tax against Air-Mac under RCW 82.04.270(2) upon the following transactions:
>
> [A.] General Stock Transfers. A piece of new or used equipment or a part is located at one of the Air-Mac offices. An actual or potential customer at another location wishes to purchase or see the equipment. The office having such an item will ship the same to the requesting office or possibly directly to the customer. *The accounting shows that the inventory was transferred to the requesting office.*
>
> [B.] Interstate Transfers. A customer in Montana orders a piece of equipment which Spokane does not have in inventory. Seattle however, does have the item in stock for sale. The equipment is shipped directly by Seattle to Montana, yet, in order to give the location credit for the sale, the *accounting shows that the inventory was transferred to Spokane.*
>
> [C.] Interstate Sale with Stop for Service Enroute. Spokane receives an order for equipment from a Montana customer. The item is located in Yakima. The piece of equipment may be shipped from Yakima to Spokane for service and then may be shipped by Spokane to the customer in Montana for sale. *This transfer of inventory is shown on Air-Mac's books as a transfer from Yakima to Spokane.*
>
> [D.] Sale at One Location, Credit to Another. A customer of the Yakima office has need for an item of equipment located in Seattle. The customer visits the Seattle office to purchase the equipment, signs the necessary sales papers in Seattle, and the equipment is delivered directly to the customer in Yakima, or he may take delivery in Seattle. *This sale will result in an inventory transfer to Yakima.*
>
> [E.] Multiple Transfers. This instance of transfer may

be illustrated by the movement of a fork lift truck in March of 1961 which moved from Spokane to Seattle, from Seattle to Yakima and from Yakima back to Seattle. *Each movement is recorded as a transfer on Air-Mac's books.*[1]

(Italics ours.)

One central issue is raised by error assigned to the trial court's conclusions of law and judgment. Is the business activity in which Air-Mac was engaged taxable under RCW 82.04.270? The statute reads as follows:[2]

(1) Upon every person except persons taxable under subsection (1) of RCW 82.04.260 engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one percent.

(2) The tax imposed by this section is levied and shall be collected from every person *engaged in the business of distributing in this state articles of tangible personal property, owned by them from their own warehouse or other central location in this state to two or more of their own retail stores or outlets, where no change of title or ownership occurs, the intent hereof being to impose a tax equal to the wholesaler's tax upon persons performing functions essentially comparable to those of a wholesaler,* but not actually making sales:  . . .

(Italics ours.)

Air-Mac acknowledges that parts and equipment transferred between the various locations were tangible personal property, the merchandise was owned by them, and no change of ownership took place during a transfer, all of which are within the purview of the statute. Air-Mac contends, nevertheless, it was engaged in the business of retailing and was not "engaged in the *business of distribut-*

---

[1]The Tax Commission did not attempt to impose a tax on each movement. RCW 82.04.270(2) provides in part: "the tax designated in this section may not be assessed twice to the same person for the same article."

[2]RCW 82.04.270 was amended in 1967 to increase the tax rate to 44/100 of 1 per cent.

*ing"* articles of personal property. It argues that the inter-store transfers of inventory occurred only "sporadically".

Without doubt, Air-Mac's *principal* business was retailing. However, *each* business activity in which one is engaged is subject to the business and occupation tax, not just the *principal* business. RCW 82.04.440.

Contrary to Air-Mac's assertion, the findings of fact show "there [was] a *constant* transfer of parts as well as equipment between the various locations". Furthermore, all interstore property transfers were accompanied by a transfer of inventory on the company's books even though no change of ownership took place. From this it is clear each outlet stood systematically ready to supply parts and equipment, on request, to the other outlets in the chain.

The word "distribute" is defined: "To divide among several or many; deal out; apportion; allot," Merriam-Webster Third Int'l Dictionary (1966). As thus defined, each outlet was "engaged in the business of distributing in this state articles of tangible personal property, owned by them" to others within the same ownership.

Air-Mac also maintains it had no "warehouse or other central location" from which it distributed inventory. Tax Commission Rule 231 explains the phrase as follows:

> The term "warehouse or other central location" generally means any facility *regardless of the type of activity conducted there,* which is operated in this state by a person who *distributes tangible personal property from that facility to two or more of his own retail stores or outlets.*
>
> The said term *includes any retail outlet irrespective of how the distributed goods may be inventoried or stored at such outlet. The term includes any facility,* central distributing point, building, loading platform and adjacent areas operated by the taxpayer *where articles of tangible personal property are received and from which they are distributed. Such facilities,* distributing points, buildings, platforms and areas *are included* within the term *regardless of how long such property may remain at such places and regardless of the nature of the activity performed at such places with respect to such property.*

(Italics ours.)

This definition is not challenged by Air-Mac. We are satisfied that it is a reasonable definition for the purposes of RCW 82.04.270(2) and within the framework of the policy laid down in the statute as required by *State ex rel. West v. Seattle,* 50 Wn.2d 94, 309 P.2d 751 (1957). There is no doubt that Air-Mac's outlets fall within the rule.

▪ Next, Air-Mac contends that if the outlets are denominated warehouses, the statutory expression "retail stores or outlets" must exclude a retail store physically combined with a warehouse from which distribution is made to other retail store-warehouse combinations under the same ownership. This would eliminate all three Air-Mac outlets because each is operated partly as a warehouse of the others. The following section of Tax Commission Rule 231 is cited for support:

> The term "two or more of their own retail stores or outlets" means two or more retail stores operated within this state separate and apart from any "warehouse or other central location." The term does not include a retail store or retail outlet, a part of which is operated as a warehouse from which distribution is made.

Air-Mac's interpretation is too narrow. The statute and this rule merely prevent the Tax Commission from treating a retail outlet physically attached to a warehouse as one of the two retail outlets which receives goods from the warehouse. Under RCW 82.04.270 this becomes important only when it is necessary to determine whether, for the purpose of taxation, a warehouse serves *two or more* stores or outlets under the same ownership. For example, if a taxpayer has only two retail store-warehouse combinations that serve each other, the tax does not apply because the taxpayer does not possess the requisite "two or more . . . outlets" inasmuch as the retail store connected with the distributing warehouse cannot be counted. The addition of a third such unit, however, places the taxpayer within the ambit of the tax.

Air-Mac cites no authority other than its interpretation of Tax Commission Rule 231 to support its assertion that a retail store or outlet cannot be both a retail store and a

warehouse for *other* similarly combined units under the same ownership. On the other hand, we stated in *Standard Oil Co. v. State,* 57 Wn.2d 56, 355 P.2d 349 (1960), *cert. denied,* 365 U.S. 859, 5 L. Ed. 2d 823, 81 S. Ct. 827 (1961) that the fact that an outlet sells both at retail and wholesale does not take it out of the scope of the statute. In the case at hand, we see no reason to exclude a retail outlet merely because it also serves as a warehouse for *other* retail outlets.

Finally, Air-Mac contends *Foremost Dairies, Inc. v. State Tax Comm'n,* 75 Wn.2d 758, 453 P.2d 870 (1969) and *Rusan's, Inc. v. State,* 77 W.D.2d 355, 462 P.2d 218 (1969)[3] compel a decision in its favor. We do not agree.

In *Foremost,* the tax was not imposed because loading stations to which the wholesale-processing plant made daily deliveries "were not intended to be, nor were they used as retail outlets," and "delivery trucks, by statutory exemption, are not retail outlets." There, at page 763, we stated: "To characterize this process as wholesaling at the main plant and retailing at the loading station is a strained construction of those terms." *Foremost* is distinguishable on its facts.

*Rusan's* is also distinguishable. Wearing apparel ordered specifically for one of three retail outlets owned by the taxpayer was shipped to its downtown store for the sole purpose of unpacking, steam pressing, and the attachment of price tags. The downtown store, for reasons of economy, merely prepared the goods for display while enroute to the preconsigned outlets. The merchandise reached the store to which it was consigned within hours after the initial arrival. The court found nothing comparable to a wholesaling function under those limited facts. On the other hand, Air-Mac's activities definitely show a wholesaling function.

When interpreting RCW 82.04.270 (2), we said in *Foremost,* at page 761:

It was the obvious intent of the legislature to tax as a "wholesaling function" the horizontal merchandising

---

[3] At the time of writing this opinion a petition to rehear *Rusan's, Inc. v. State,* 77 W.D.2d 355, 462 P.2d 218 (1969) has been filed.

scheme which competes with and, except for change of title to goods, is essentially similar to the typical vertical division of merchandising whereby goods are sold by manufacturers/processors to a jobber/wholesaler and on to the retailer for sale to the ultimate consumer.

Considering Air-Mac's operation in this light it is clear each outlet in the chain benefited by being a part of a horizontal wholesaling combination in which each served as a warehouse for the others.

■ The business was conducted in such a way that each location stood ready to supply its inventory to the other two as their needs developed. When goods were transferred from one location to another, the company's books reflected a formal distribution of inventory between outlets. The constant transfer of parts and equipment eliminated the necessity of a costly duplication of stock carried by any one outlet. The floor space required by each outlet was reduced by spreading the inventory among three locations. The necessity of maintaining a separate warehouse was eliminated. The need to order in small quantities from warehouses owned by independent wholesalers was materially reduced. In short, it was a horizontal merchandising scheme which competed with and, except for a change in title to goods, was essentially similar to the typical vertical divisions of wholesale merchandising taxed under RCW 82.04.270(1). This operation is strikingly different from the retailing function performed by Rusan's.

The purpose of RCW 82.04.270(2) is to neutralize the tax advantage of a horizontal merchandising scheme used to eliminate the normal vertical wholesaling functions. The business and occupation tax plus accrued interest was properly assessed against Air-Mac.

The trial court is affirmed.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, HALE, NEILL, and MCGOVERN, JJ., concur.