[No. 40412. En Banc. December 24, 1970.]

RUSAN'S, INC., *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.**

*Reported in 478 P.2d 724.

*The Attorney General, J. Richard Duggan* and *Timothy R. Malone, Assistants,* for appellant.

*Paine, Lowe, Coffin, Herman & O'Kelly,* by *Horton Herman* and *John R. Quinlan,* for respondent.

FINLEY, J.—The previous majority opinion in this case (reported in 77 W.D.2d 355, 462 P.2d 218 (1969)), does not properly resolve several significant aspects of this appeal. The end result is an erroneous interpretation of the provisions of subsection (2) of RCW 82.04.270.

Although the facts of this appeal are fully stated in the original majority opinion, a brief recapping here is useful to clarify the grounds for the present opinion. Rusan's, Inc., is a Washington corporation which, during the times pertinent to this litigation, operated four women's apparel stores in Spokane. Each store catered to the individual clothing tastes of the customers in its particular locale. Rusan's buyers placed periodic orders with out-of-state wholesalers and manufacturers. These suppliers were directed to individually box and mark clothing, designating it for the particular Rusan's store for which it was destined. All merchandise was, however, delivered to Rusan's downtown store. Upon arrival the merchandise was removed from its boxes, steamed for display, and priced. The merchandise was then placed on racks which were individually marked as belonging to the Rusan's store for which it was destined. While in the downtown Rusan's receiving room, the clothing of each store at all times remained identified with the particular Rusan's store for which it had been ordered. Within one day of receipt, the merchandise was delivered, by Rusan's trucks, to the appropriate Rusan's store.

In our judgment, the previous opinion lacks proper emphasis upon (1) the fact that the power of the legislature is tantamount to being plenary in the imposition of excise taxes—*i.e.,* taxation of activities; and (2) that the legislature, in enacting subsection (2) of RCW 82.04.270, exercised its well-nigh plenary power in imposing this excise tax.

In numerous instances the legislature has taxed certain run-of-the-mill, usual, or well-recognized activities, such as retailing, wholesaling, processing or manufacturing. As to those activities clearly falling within the indicated categories—*i.e.*, usually and habitually so defined and regarded—few, if any, disabling legal questions may be raised relative to the validity of excise taxation. The exceptions to this proposition, for the most part, involve considerations relating to equal protection and to the commercial reasonableness of the classification.

Closely collateral to the imposition of excise taxes upon clearly run-of-the-mill activities, the legislature further has the authority to impose excise taxes upon other activities of a *comparable or related nature.* Thus, the power of the legislature in the field of excise taxation is such that taxes may be imposed upon activities which, although not normally considered to be within a given category, are, nevertheless, deemed by the legislature, *for tax purposes, to* be within such a category. *See Bornstein Sea Foods, Inc. v. State,* 60 Wn.2d 169, 373 P.2d 483 (1962); *Stokely-Van Camp, Inc. v. State,* 50 Wn.2d 492, 312 P.2d 816 (1957). Such taxes have frequently raised judicial hackles and doubts; *nevertheless,* even more frequently they have been held to be within the legislature's power of enactment. For purposes of analysis, it is possible to express the legislature's power in this regard by an illustrative formula: it is unquestionably true that the legislature has the power to impose excise taxes upon activities which clearly fall within a commonly recognized category which could be labeled "A" or which would be clearly recognized or describable as "black." In addition, however, it is within the power of the legislature to provide that certain specified activities, not clearly within category "A" or not clearly describable as "black," nevertheless, *for the purpose of tax imposition,* are *deemed* to be categorized as "A" or "black."

In other words, the problem is not whether the legislature has the power to impose the tax. Rather, the only legal question presented for an appellate court is whether confusion and doubt exist as to the nomenclature employed or

the language used by the legislature in drafting and imposing a given excise tax. These considerations dramatically illustrate the nature of the problem in the instant case. The central question presented is whether the merchandising arrangements or activities performed by Rusan's, Inc., may be said to be included within the language employed by the legislature in drafting subsection (2) of RCW 82.04.270.

The error in the previous majority opinion of this court is its assumption that the described activities of Rusan's, Inc., are solely or completely descriptive of a retail operation, with no semblance or comparability whatsoever to wholesale activities or functions. The crucial question which should be, but is not, asked by the previous opinion is: What are the usual or "run-of-the-mill" activities of wholesalers? A short, but accurate, answer to this question would seem to be that (a) wholesalers acquire or purchase merchandise from manufacturers or processors; (b) wholesalers—the run-of-the-mill variety—perform no manufacturing and few, if any, processing activities or functions with respect to merchandise acquired or purchased; and (c) wholesalers arrange for merchandise to be offered, transported, and delivered to retailers on the basis of cash, credit or other bookkeeping terms. In other words, wholesalers, in the performance of their activities or functions, merely provide a "merchandising conduit" for the flow of goods, wares, and merchandise from manufacturers and processors to retail outlets, and, finally to the consuming public.

It is thus instructive to compare the described activities of Rusan's, Inc., in the instant case to the above-stated description of wholesaling: (a) Rusan's acquired merchandise from manufacturers and other suppliers; (b) Rusan's performed no manufacturing and little or no significant processing functions as to the merchandise; and (c) thereafter, Rusan's made the merchandise available to retailers for sale—i.e., by delivering the merchandise to their retail outlets. Additionally, Rusan's made the necessary bookkeeping arrangements for payment or reimbursement for the merchandise acquired, offered, transported, and distrib-

uted to the several retail stores. We are convinced that these activities can, and properly should, be regarded as *closely comparable to* those of a wholesaler. The statute, by clear inference, does not require that such activities be "simon-pure" wholesaling activities. In fact, subsection (2) of RCW 82.04.270 specifically negates the significance or the necessity of a "purchase and sale," involving passage or changing of title (which obviously did not occur in the instant case involving passage of merchandise from Rusan's downtown store to its several retail stores).

Lastly, in deciding this appeal in favor of Rusan's, Inc., the previous majority opinion relies almost exclusively upon stipulation of fact 4 entered into by the parties. That opinion's emphasis, in our judgment, misinterprets this stipulation by taking certain of its portions completely out of context and giving those portions an "out of context" interpretation. The full stipulation of fact 4 reads as follows:

> The activity taxed under the Washington Business and Occupation Tax in this situation is the alleged wholesaling function activities of the plaintiff. The measure of the assessed tax is the value of articles shipped from the Rusan's downtown location to the outlying Rusan's store times the wholesaling function business tax rate. The measure of the tax is not in dispute. *What is in dispute is whether under the above facts, Rusan's is engaged in wholesaling functions subject to tax under the provisions of RCW 82.04.270(2). If wholesaling functions are not present in this situation, there is no tax and the measure of the tax is therefore immaterial.*

(Italics ours.)

The crucial portions of the stipulation are those italicized above—and, particularly, the words "wholesaling functions," as modified by the subsequent reference to RCW 82.04.270. The previous majority opinion in this appeal interprets the words "wholesaling functions" in a usual, run-of-the-mill sense. But the words "wholesaling functions" should be interpreted in relation to the remainder of the sentence which reads, "subject to tax under the provisions of RCW 82.04.270 (2)." In other words, this language of the

stipulation connotes *wholesaling functions as described in subsection (2) of RCW 82.04.270.* Reading the stipulation in its full context—within its four corners—the words "wholesaling functions" must be interpreted to mean activities or functions as provided in subsection (2); namely, activities *which are not "simon-pure" wholesaling functions but which are closely comparable to such.*

It should be obvious that the tax here in question is *not* a tax on wholesaling functions imposed under subsection (1) of RCW 82.04.270. Rather, it is a tax imposed in lieu of wholesaling functions taxable under subsection (1) of the statute. As such, subsection (2) is intended to impose an excise tax upon functions which are closely comparable, but not precisely those, or precisely similar, to those of wholesaling. The last sentence of stipulation of fact 4 can make little or no sense unless read in this context. When so read, the language merely means: "if wholesaling functions as provided or described in subsection (2) of the statute— *i.e., functions not strictly wholesaling in nature* but closely comparable to wholesaling—are not present in this situation, there is no tax and the measure of the tax is therefore immaterial." Reading the critical language of the stipulation in the indicated full context, the basis of the original majority opinion vanishes; and the excise tax imposed upon Rusan's, Inc., under subsection (2) of the statute should be sustained rather than voided.

■ There is another, more significant, defect in the original majority opinion. Essentially, that opinion rests on the proposition that the parties herein—and particularly the state tax commission—have stipulated themselves out of court. Such a result, however, is not possible. Courts of law are not bound by parties' stipulations of law. *See* 50 Am. Jur. *Stipulations* § 5, at 607; 5 Am. Jur. 2d *Appeal and Error* § 712, at 158. The propriety of disregarding stipulations as to questions of law is considered to be particularly clear where such stipulations are made in cases concerning a public issue. *North Platte Lodge v. Board of Equalization,* 125 Neb. 841, 252 N.W. 313, 92 A.L.R. 658 (1934). Most particularly, interpretation and application of tax statutes,

including those relative to excise taxes, is a judicial function. In a litigated case, neither a taxpayer nor a department of government may irrevocably stipulate as to the meaning, interpretation or legal effect of a tax statute. *See Estate of Sanford v. Commissioner*, 308 U.S. 39, 84 L. Ed. 20, 60 S. Ct. 51 (1939). Such a process would be an undesirable if not dangerous public policy, for it would usurp the basic and traditional judicial function of the courts in the interpretation of tax statutes enacted by the legislature.

For the reasons indicated, the trial court is reversed and the imposition of the excise tax against Rusan's, Inc., under the provisions of subsection (2) of RCW 82.04.270, is sustained.

HAMILTON, HALE, McGOVERN, and SHARP, JJ., concur.

HUNTER, C. J. (dissenting)—I dissent. I agree with the majority that the test in the disposition of this case is whether the handling of the goods by Rusan's was essentially comparable to a wholesaling function. The intent clause of RCW 82.04.270(2) clearly indicates that the legislative purpose is to impose a tax upon activities that would otherwise constitute a wholesaling function except for a sale of the goods taking place. The statute provides in part:

> (2) The tax imposed by this section is levied and shall be collected from every person engaged in the business of distributing in this state articles of tangible personal property, owned by them from their own warehouse or other central location in this state to two or more of their own retail stores or outlets, where no change of title or ownership occurs, the intent hereof being to impose a tax equal to the wholesaler's tax upon persons performing functions essentially comparable to those of a wholesaler, but not actually making sales: . . .

An examination of the cases in which we have held functions to be essentially comparable to a wholesaling activity under RCW 82.04.270(2) discloses that none of these cases have a fact pattern similar to the present case.

In *Standard Oil Co. v. State*, 57 Wn.2d 56, 355 P.2d 349 (1960), *cert. denied*, 365 U.S. 859, 5 L. Ed. 2d 823, 81 S. Ct.

827 (1961), we were concerned with a distribution of goods from a central depot to two or more retail outlets. There was a deposit and storage of petroleum products at a terminal storage plant, and a subsequent transfer of the products to bulk plants for distribution to ultimate consumers. The goods were commingled and unidentified at the distribution depot. We therefore held these activities to be essentially comparable to wholesale functions and taxable under the statute, *supra*.

In *General Baking Co. v. State*, 62 Wn.2d 18, 380 P.2d 727 (1963), we held that a distribution of bakery products from a central plant to its leased retail outlets and its own retail stores was a function essentially comparable to that of a wholesaler.

Our most recent consideration of this tax was in *Air-Mac, Inc. v. State*, 78 Wn.2d 319, 474 P.2d 261 (1970). In this case there was a constant transfer of inventory and parts between the stores with appropriate bookkeeping entries. We therein held each retail outlet was the central depot as to the other stores; that this was therefore essentially comparable to a wholesaling function and was subject to tax under the statute, *supra*.

Distinguishing the facts of the instant case, the dresses and other articles of apparel were purchased by Rusan's buyers for each individual store and were shipped in boxes marked for that store. When the boxes arrived in Spokane, they were delivered to the downtown Rusan's store where the merchandise was kept in the receiving room for a matter of hours while the clothing was steamed and marked with retail price tags. The clothing was placed on racks reserved for the store for which it had been purchased, and the racks were then transported to that store.

In view of these facts, it seems apparent that Rusan's operation is not essentially comparable to a wholesaling function. The merchandise was ordered by buyers for each individual store. Rusan's downtown store did not receive or place the orders for the other retail outlets, nor did the downtown store have sufficient inventory to fill any orders. Rusan's buyers did not order large quantities of clothing

requiring storage. Nor was the merchandise ordered with the intent to distribute or transfer it among the various outlets. The garments remained earmarked for the specific stores and were not commingled upon arrival at the downtown store. The goods were, in effect, received only for the purpose of steaming and pricing while en route to the stores for which they had been purchased for retail sale.

The judgment of the trial court holding Rusan's activity was not taxable under the statute, *supra,* should be affirmed.

ROSELLINI, NEILL, and STAFFORD, JJ., concur with HUNTER, C. J.

March 10, 1971. Petition for rehearing denied.