[No. 6174-1-II. Division Two. March 9, 1984.]

VAN'S P–X, INC., *Appellant,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Simon Wampold,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *James R. Tuttle* and *William B. Collins, Assistants,* for respondent.

PETRICH, C.J.—Taxpayer Van's P–X, Inc., now known as Don Campbell's Quality Foodservice, Inc., appeals a Superior Court order denying a refund for a wholesale function business and occupation tax paid under RCW 82.04.270(2). Taxpayer contends that it is not acting essentially as a wholesaler in its industrial mobile catering business. We hold that the taxpayer's activities are comparable to that of a wholesaler and that the tax was properly assessed.

■ The taxpayer's initial assignments of error are directed to several of the trial court's findings of fact. The taxpayer goes on to state repeatedly that the facts in the case are not in dispute; rather, it is the trial court's conclusion that taxpayer is making a wholesale distribution to its catering trucks that is in error. As the challenge to the findings of fact is unsupported by argument, we shall consider the findings verities on appeal. *Lutz v. Longview,* 83 Wn.2d 566, 520 P.2d 1374 (1974).

The taxpayer's main argument is that its operations as an industrial mobile caterer do not fit the description of one who is performing functions essentially comparable to those of a wholesaler. The taxpayer's operations are briefly described as follows. Taxpayer's trucks stop on the prem-

ises of various industries to sell the employees food, beverage and sundry items. These food items, received in bulk quantities from food manufacturers and brokers, are prepared and collected together for placement upon the trucks at one of the three central business locations of the catering firm. The truck drivers stop at prearranged industrial locations and sell the food items at a prearranged price; the driver makes no decisions about items to be sold or item prices and does no recordkeeping, nor does he earn a commission for items sold. The taxpayer pays retail sales tax and pays retail business and occupation tax on these off-truck sales.

■ RCW 82.04.270(2) provides that a wholesale function tax shall be imposed as follows:

(2) The tax imposed by this section is levied and shall be collected from every person engaged in the business of distributing in this state articles of tangible personal property, owned by them from their own warehouse or other central location in this state to two or more of their own retail stores or outlets, where no change of title or ownership occurs, *the intent hereof being to impose a tax equal to the wholesaler's tax upon persons performing functions essentially comparable to those of a wholesaler, but not actually making sales:* . . .

(Italics ours.) The intent of the Legislature is to tax as a "wholesaling function" the horizontal merchandising scheme which competes with and, except for change of title to goods, is essentially similar to the typical vertical division of merchandising whereby goods are sold by manufacturers/processors to a jobber/wholesaler and on to the retailer for sale to the ultimate consumer. *Foremost Dairies, Inc. v. State Tax Comm'n,* 75 Wn.2d 758, 453 P.2d 870 (1969).

The words "wholesaling functions" must be interpreted to mean activities or functions which are closely comparable to, but are not "simon-pure" wholesaling functions. *Rusan's, Inc. v. State,* 78 Wn.2d 601, 478 P.2d 724 (1970).

*Rusan's* set forth the usual or "run-of-the-mill" activities of a wholesaler to aid in determining whether a tax-

payer's activities are closely comparable thereto:

(a) [W]holesalers acquire or purchase merchandise from manufacturers or processors; (b) wholesalers—the run-of-the-mill variety—perform no manufacturing and few, if any, processing activities or functions with respect to merchandise acquired or purchased; and (c) wholesalers arrange for merchandise to be offered, transported, and delivered to retailers on the basis of cash, credit or other bookkeeping terms. In other words, wholesalers, in the performance of their activities or functions, merely provide a "merchandising conduit" for the flow of goods, wares, and merchandise from manufacturers and processors to retail outlets, and, finally to the consuming public.

*Rusan's, Inc.,* 78 Wn.2d at 604. RCW 82.04.060 provides that a wholesale sale means all sales that are not at retail, *i.e.,* sales that are not to consumers. *See Standard Oil Co. v. State,* 57 Wn.2d 56, 355 P.2d 349 (1960), *cert. denied,* 365 U.S. 859 (1961). The statute, however, specifically negates the necessity of an actual sale.

In *Rusan's,* the court compared the taxpayer's activities to the "run-of-the-mill" wholesaler's activities set forth above. Rusan's, Inc., operated four women's apparel stores. Rusan's buyers from the four stores placed clothing orders with out-of-state manufacturers. All merchandise received, regardless of which Rusan's stores had ordered it, went to the downtown store for pressing and pricing before the ordering store received it. The court found that Rusan's ordered from manufacturers; Rusan's performed little processing functions; and the downtown store, its central location, made the merchandise available for retail sale by delivering the merchandise to the store that had ordered it and was to sell it to the consumer. The court concluded Rusan's activities were closely comparable to that of a wholesaler and imposed the wholesale function tax.

In this case, taxpayer places orders with manufacturers and food brokers. At its Seattle plant, taxpayer does some preparation of food items, but, many items are prepackaged. Taxpayer makes the food items available for retail sale by dividing all the items among its trucks and placing

them on the trucks for sale to consumers. This operation is not much different from Rusan's. While taxpayer may be involved in more processing at its central locations than was Rusan's downtown store, we are mindful of *General Baking Co. v. State,* 62 Wn.2d 18, 380 P.2d 727 (1963), wherein the wholesale function tax was imposed upon a bakery for distributing goods it baked and packaged to leased retail outlets and its own retail stores, with no change of ownership, for sale to consumers. We emphasize once again that a taxpayer's activities need not be simon-pure wholesaling for the wholesale functions tax to apply. *Rusan's, Inc. v. State, supra.*

The statute imposes the tax upon persons engaged in the business of distributing articles of property, owned by them, from their own warehouse or other central location, to two or more of their own retail stores or outlets, where no change of ownership occurs. Distribution is defined as dividing among several; to apportion. *Air–Mac, Inc. v. State,* 78 Wn.2d 319, 474 P.2d 261 (1970). Taxpayer clearly engages in distribution when it divides all its food and sundry items among the 87 trucks. It need not be taxpayer's *primary* activity. *Air–Mac, Inc. v. State, supra.*

WAC 458–20–231 (Rule 231) further elaborates on RCW 82.04.270(2) as follows:

The term "warehouse or other central location" generally means any facility regardless of the type of activity conducted there, which is operated in this state by a person who distributed tangible personal property from that facility to two or more of his own retail stores or outlets.

The said term includes any retail outlet irrespective of how the distributed goods may be inventoried or stored at such outlet. The term includes any facility, central distributing point, building, loading platform and adjacent areas operated by the taxpayer where articles of tangible personal property are received and from which they are distributed. Such facilities, distributing points, buildings, platforms and areas are included within the term regardless of how long such property may remain at such places and regardless of the nature of the activity performed at such places with respect to such property.

Retail stores or outlets are defined as:

[T]wo or more retail stores operated within this state separate and apart from any "warehouse or other central location." The term does not include a retail store or retail outlet, a part of which is operated as a warehouse from which distribution is made. The term does not include delivery trucks . . .

 Taxpayer does not argue that the three central locations where the food items are divided and placed on the trucks are not warehouses, rather, taxpayer argues that its trucks are not retail stores or outlets because they are not "separate and apart" from the warehouses as required by Rule 231. Thus, since no distribution is made from a warehouse to a retail store or outlet, the tax is improper. As the Supreme Court said in *Standard Oil,* 57 Wn.2d at 62, "[w]e are at a loss to understand what a retail outlet is if it is not a place from which retail sales are made . . ." It is undisputed that retail sales are made from taxpayer's trucks. This case is distinguishable from *Foremost Dairies, Inc. v. State Tax Comm'n, supra,* wherein the wholesale function tax was not imposed. The trucks in that case were only delivery trucks since orders were placed by the customers with the main office and were billed from the main office.

Taxpayer's argument that its trucks are not separate and apart from the rest of the catering operation in the sense that they are not operated independently with separate recordkeeping and management functions is not supported by the interpretation of the words "separate and apart" in *Air–Mac, Inc. v. State, supra.*

There, three retail stores constantly supplied each other with inventory and parts as needed. The court held each of the three stores was a central location as to the other two and that wholesaling functions had occurred. The taxpayer argued that if each store was also a warehouse, the retail stores had to be excluded under Rule 231 since they were physically attached to the warehouse. The court ruled that Rule 231 merely prevents a retail outlet physically attached to a warehouse from being one of the two stores receiving

distributions. Since in *Air–Mac* there were three warehouse–retail store combinations, the tax was proper.

In sum, the findings of fact support the conclusion that taxpayer was operating essentially as a wholesaler in distributing food and sundry items to its trucks for retail sale to consumers at industrial locations. We affirm the order denying a refund.

REED and WORSWICK, JJ., concur.