[No. 24741-1-II.   Division Two.   May 26, 2000.]

J. HEATHER POTTER, *Respondent*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Appellant*.

*Christine O. Gregoire, Attorney General*, and *Jerome E. Westby, Assistant*, for appellant.

*Will Hatch*, for respondent.

SEINFELD, J. — This Department of Retirement Systems (Department) appeal raises the question of when the statute of limitations began to run on J. Heather Potter's claim for duty disability retirement benefits. We agree with the Department that the limitation period began to run when Potter's compensable injury causing total incapacity became apparent, and we hold that an injury becomes apparent when a worker knows or should have known that she was no longer able to perform her work-related duties. Consequently, we reverse the superior court, which found the application to be timely filed and reversed the Department's denial of benefits.

## FACTS

Potter became a member of the Public Employees' Retirement System in August 1968; in March 1983 she started working as a secretary for the Department of Labor and Industries (L&I). On March 2, 1984, Potter ruptured a disc in her lower back while lifting a box at work. She was hospitalized and in traction for two weeks, after which time she returned to work.

On March 26, Potter filed an accident report with L&I

and soon started receiving benefits under the Industrial Insurance Act (IIA). She was unable to continue working and her last day of actual work at L&I was May 21, 1984.

In December 1984, Potter underwent back surgery to dissolve her herniated disc. She had a chemical reaction to the dye used in the procedure that worsened her back condition and increased her pain. This in turn led to serious psychiatric problems that apparently developed over time, including depression and an anger disorder that prevented her from working with others for any length of time.

In early 1986, Potter asked her attorney to investigate options for disability benefits. The attorney wrote to the Department for the necessary application forms, but he told Potter this act would be his last act as her representative. Although the attorney's letter, dated January 22, 1986, requested that the Department send the forms directly to Potter, apparently the Department sent the forms to the attorney, who later could not recall whether he received them or forwarded them to Potter.

Potter made several more attempts, starting in 1987, to obtain the appropriate application forms, but the Department repeatedly told her that the two-year statute of limitations period had run. In one of her telephone calls to the Department, Potter spoke with an unidentified man who told her that she would not even be eligible to apply for duty disability retirement (DDR) benefits until she had been disability separated from her employment.

At the same time, Potter continued to receive IIA benefits. Then, on January 9, 1990, L&I terminated those benefits and instead granted Potter permanent partial disability. Potter appealed this decision and, for four years, continued her struggle to retain her IIA benefits. In December 1994, as a result of one of Potter's appeals, the Board of Industrial Insurance Appeals (BIIA) determined that Potter's physical and mental condition rendered her permanently and totally disabled as of May 10, 1994. On May 1, 1995, L&I disability separated Potter from her employment.

On May 20, 1996, Potter applied for DDR benefits, and on December 5, 1996, the Department again informed Potter that her application was untimely under the statute of limitations. A Petitions Examiner denied her petition for review and the Presiding Officer affirmed, after considering and finding inapplicable the case of *Wagner v. Public Employees' Retirement Bd.*, 17 Wn. App. 164, 561 P.2d 1131 (1977).

Potter then petitioned the superior court for review. The superior court found the *Wagner* case to be applicable, determined that Potter's application was timely filed, and entered an order stating that her application for DDR benefits "was within 2 years of total disability and shall be granted by the Dept. of Retirement Systems with benefits and service credit accruals to begin May 1, 1995." The Department appeals from this order.

## I. TIMELINESS OF APPLICATION

The decisive issue here is whether the statute of limitations barred Potter's appeal. This question turns on the applicability of *Wagner* to the facts of this case. Potter asserts that she did not have a compensable injury that qualified her for benefits until the BIIA declared her totally disabled. The Department disagrees, arguing that because Potter never returned to work, her status as a totally incapacitated employee dates from May 21, 1984—her last day of work.

Under the Administrative Procedure Act, the court may grant relief from an agency order when (1) the decision is based upon an error of law; (2) the decision is not based upon substantial evidence; or (3) the decision is arbitrary or capricious. RCW 34.05.570;[1] *Valley Fruit v. Department of Revenue*, 92 Wn. App. 413, 416, 963 P.2d 886 (1998),

---

[1] RCW 34.05.570 provides, in pertinent part:

(3) Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

*review denied*, 137 Wn.2d 1017 (1999). The burden of demonstrating the invalidity of agency action is on the party asserting invalidity, and the court will grant relief on appeal only if it determines that the action complained of has substantially prejudiced the person seeking judicial relief. RCW 34.05.570(1).

██ ██ We review the administrative decision directly, based on the record before the agency. *Alpine Lakes Protection Soc'y v. Department of Natural Resources*, 102 Wn. App. 1, 979 P.2d 929, 936 (1999). We review conclusions of law under the error of law standard and may substitute our judgment for that of the agency. *Department of Ecology v. Lundgren*, 94 Wn. App. 236, 241, 971 P.2d 948, *review denied*, 138 Wn.2d 1005 (1999).

Employees enrolled in the Public Employees' Retirement System may obtain retirement benefits because of an on-the-job injury if they apply within two years of their "injury." RCW 41.40.200. This statute provides, in pertinent part:

(1) . . . [U]pon application of a member, or his or her employer, a member who becomes totally incapacitated for duty as the natural and proximate result of an accident occurring in the actual performance of duty . . . without willful negligence on his or her part, shall be retired subject to the following conditions:

(a) That the medical adviser, after a medical examination of such member made by or under the direction of the medical adviser, shall certify in writing that the member is mentally or physically totally incapacitated for the further performance of his or her duty and that such member should be retired;

. . . .

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

. . . .

(i) The order is arbitrary or capricious.

(b) That the director concurs in the recommendation of the medical adviser;

(c) That no application shall be valid or a claim thereunder enforceable unless, in the case of an accident, the claim is filed within two years after the date upon which the injury occurred . . . .

RCW 41.40.200.

In the only case interpreting the statute of limitations provision of this statute, this court held that the limitation period begins to run when the injury becomes "apparent," rather than from the date of the accident. *Wagner*, 17 Wn. App. at 169.

In *Wagner*, an employee of the Mason County Highway Department tore his knee cartilage on September 11, 1970. 17 Wn. App. at 165. Doctors performed surgery the following day and, after a few weeks of convalescence, Wagner returned to work and continued working until June 22, 1973. *Wagner*, 17 Wn. App. at 165. The stipulated facts in the case stated:

(H)is employment was terminated due to his inability to engage in work requiring squatting, stooping, bending and general agility of movement or in the out of doors, and thus became totally incapacitated for duty, which total incapacity was likely to be permanent and has continued to the present;

That Edward Wagner's time off from work following the September 12, 1970 surgery on his knee was convalescent in nature and not apparently totally incapacitating for duty for any substantial period of time and was fully compensated by Workmen's Compensation insurance;

That his total incapacity for duty did not appear until June 22, 1973 when his employment was terminated and he has since sought employment on numerous instances but without success and has been found to be totally disabled under the Federal Social Security Act by reason of the combined effect of his knee condition resulting from his awkward squatting and training in any other field combined with the disadvantages arising from his limited educational attainments terminated by his leaving the 8th grade in 1937;

That Edward Wagner's total incapacity for duty is the natural and proximate result of an accident occurring in the actual performance of duty, while in the service of an employer, Mason County, without willful negligence on the part of Edward Wagner.

*Wagner,* 17 Wn. App. at 165-66.

The Retirement Board denied Wagner's claim, concluding:

1. That Edward Wagner was totally disabled during and immediately following the knee surgery which he had on September 12, 1970. He was at that time eligible to apply for disability benefits and failed to do so. Therefore, the injury was first disabling as of that date. His failure to apply within two years of that date clearly places him outside the requirements of RCW 41.40.200.

2. Even if the disability did not become totally disabling until June 22, 1973, the application was filed more than two years subsequent to the date upon which the injury occurred— September 11, 1970—and is hereby precluded under RCW 41.40.200.

*Wagner,* 17 Wn. App. at 166.

Wagner argued that the phrase, "the date upon which the injury occurred," in the context of the Retirement Act, is not limited to the day of the accident but also includes the date when the condition arising from an accident becomes a "compensable injury." *Wagner,* 17 Wn. App. at 168. The court agreed, stating:

The retirement benefits (or allowances) are "pension[s]", RCW 41.40.010(19) which "means payments for life . . .." (RCW 41.40.010(18)). Certainly the legislature did not intend that periods of temporary total disability, followed by a return to duty would be compensable under the retirement system, whereas such conditions are contemplated and compensable under the workmen's compensation act. The Board's attempted analogy between the two acts is without merit. Benefits cannot accrue under the retirement system until the member has permanently terminated his service to the

governmental agency. To sustain the board's application of the time limitation for the filing of the claim, we would have to require that the claim be made prior to the employee becoming "totally incapacitated," prior to separation from active service, and prior to the accrual of any benefits which could be paid. Such an interpretation could not logically be the legislative intent.

Statutory time limitations governing the filing of claims for workmen's compensation have been subjected to substantial judicial discussion. The cases in this area have been analyzed in 3 A. Larson *The Law of Workmen's Compensation* § 78.42(a), at 102 (1976) where the author comes to the conclusion: Under the "injury" type of statute, there is now almost complete judicial agreement that the claim period runs from the time compensable injury becomes apparent.

The trial court in its well-reasoned memorandum opinion similarly interpreted the retirement system act:

The matter revolves around a construction of R.C.W. 41.40.200. That Statute allows a benefit which arises as the proximate result of "an accident" occurring in the actual performance of duty. The same section requires, however, that an application for such benefits shall not be valid unless filed within two years after the date upon which "the injury" occurred.

By the use of different terms the Statute recognizes that an accident may give rise to a compensable injury sometime in the future. That is exactly what has happened in the case at bar. The Board found that, at the time of the accident, plaintiff's time off work was convalescent in nature and not "apparently incapacitating for duty for any substantial period of time." Plaintiff could not, therefore, file a valid claim at that time. It is inconceivable to the Court that the legislature contemplated a progressive injury, such as the one in this case, in which the incapacity arose more than two years after the accident be noncompensable. The word "injury" must, therefore, be read to mean "incapacity" or "total incapacity."

The actionable event, the compensable "injury," did not occur under the statute, RCW 41.40.200 until a medical adviser certified that Wagner was "totally incapacitated for the fur-

ther performance of his duty to his employer . . ." The time period for filing the claim did not commence until June 22, 1973. Wagner's application for benefits was timely made.

*Wagner*, 17 Wn. App. at 168-69 (footnotes omitted).

Here, the parties agree that Potter's injury is the natural and proximate result of the lifting accident, that it occurred during the performance of her duties for L&I, and that she was not negligent. They also agree that the injury resulted in total incapacitation. The only dispute is when the total incapacitation became apparent, thereby triggering the statute of limitations.

■ While the rule set out in *Wagner*—that an injury is not compensable under RCW 41.40.200 until it becomes "apparent" that it is totally incapacitating and the worker permanently terminates his or her service to the employer—is applicable here, we must clarify it before we can apply it to the facts of this case. 17 Wn. App. at 168-69. The use of the word "apparent" indicates that an objective test must be used to determine when an injury is compensable under the statute. Thus, an injury becomes totally incapacitating, and thus compensable, when a reasonable person knew or should have known that she was no longer able to perform her duties for her employer.

Here, the record indicates that Potter either knew or reasonably should have known that her injury was totally incapacitating on May 21, 1984, her last day of actual work at L&I. This was several months after her initial injury. Meanwhile, she had attempted to return to work after a short convalescent period and found that she could no longer perform her duties. At that time, Potter's total incapacity for duty, and hence her compensable injury, became "apparent." On that same date, Potter permanently terminated her active service to L&I. Thus, the statute of limitations expired on May 20, 1986, and her application ten years later was untimely.

This conclusion is also consistent with the public policy underlying RCW 41.40.200(1)(c). While it is desirable to

encourage injured workers to recuperate and return to the workforce if possible, it is also important for workers to submit their claims for accident-related disability benefits at the earliest possible time. This allows the employer to investigate and to gather evidence while it is fresh regarding whether the incapacity was the "natural and proximate result of an accident occurring in the actual performance of duty . . . without [the worker's] willful negligence." RCW 41.40.200(1). If the incapacity does not meet this criteria, the worker may not be eligible for retirement benefits. Clearly, it is difficult to collect this sort of information 10 years after the injury-causing accident. Further, the filing of an early claim allows the employer to manage the enterprise more efficiently, training a new permanent employee to replace a permanently incapacitated worker.

## II. TOLLING OF STATUTE OF LIMITATIONS

Potter asserts that the statute of limitations period was tolled when her attorney notified the Department of her claim by his letter dated January 1986. The statute of limitations provision of RCW 41.40.200(1)(c) states, in pertinent part: "That no application shall be valid or a claim thereunder enforceable unless, in the case of an accident, the claim is filed within two years after the date upon which the injury occurred . . . ."

Potter asserts that this provision requires only that a "claim," and not an application, be filed. She then cites WAC 415-108-200, Disability and benefits claims, which states: "A member, the employer or any other interested person, shall notify the director by written or oral statement when it is considered that a member is suffering a disability or entitled to claim a disability benefit under chapter 41.40 RCW."

Potter argues that, under this provision, a claim may be deemed properly filed when a member's attorney orally notifies the Department that the member is entitled to claim DDR benefits. However, as the Department notes,

the first sentence of RCW 41.40.200(1) provides that the Department is to retire a member "upon application of a member, or his or her employer . . . ." and subject to certain conditions. This language indicates that the Department may not grant DDR benefits until the member has submitted an application. Further, WAC 415-108-230 requires the Department Director to examine "the application and forms for completeness . . . ." before filing them. This indicates that the member does not trigger the process to obtain DDR benefits until the member files the requisite application forms.

■ ■ Moreover, the language of RCW 41.40.200(1)(c) itself indicates that the member's claim is a part of the application, rather than a separate statement or document. Again, this provision refers to the application and the "claim thereunder." In using this language, it appears that the Legislature intended "claim" to mean the claim stated in the application. Any other interpretation would render the word "thereunder" meaningless within the statute. "Courts should not construe statutes to render any language superfluous and must avoid strained or absurd interpretations." *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998). Therefore, because the statute required Potter to claim DDR benefits by filing an application, her argument that her attorney's January 1986 letter to the Department tolled the statute of limitations in this case is not persuasive.

### III. Estoppel

Potter also seeks to apply the law of estoppel to prevent the Department from rejecting her untimely application. She argues that the Department had an affirmative duty to respond to her attorney's January 1986 request for an application by sending the form directly to her, not to her attorney, but that it failed to do so until May 1996.

■ ■ The premise upon which the doctrine of equitable estoppel rests is that a party should not be allowed to dis-

avow a representation made to another party if that party would be injured by its reliance on the representation. "It requires three elements: (1) an admission, statement, or act inconsistent with the claim afterward asserted, (2) action by the other party on the faith of the admission, statement, or act, and (3) injury to the other party resulting from permitting the first party to contradict or repudiate the admission, statement, or act." *Crown Plaza Corp. v. Synapse Software Sys., Inc.*, 87 Wn. App. 495, 502, 962 P.2d 824 (1997) (citing *Emrich v. Connell*, 105 Wn.2d 551, 559, 716 P.2d 863 (1986)). Estoppel is not favored and a party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence. *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993).

Here, it appears that Potter's attorney made a timely request for the application forms and that the Department responded by mailing the forms to the attorney, who could not recall whether he received them or forwarded them to Potter. But we have difficulty understanding how the doctrine of estoppel applies to these facts. At this point, the Department had not acted in a way inconsistent with its later position. Nor has Potter shown how she relied on the Department's action.

The only time that the Department allegedly took an inconsistent position was in 1987 when an unidentified Department employee told Potter that she was premature in requesting DDR benefit application forms. At that point, the two-year statutory period had already elapsed. Further, Potter fails to show that she relied upon this statement to her detriment. And we cannot see how this comment, made in the midst of the Department's repeated statements that the statute of limitations had run, could have caused Potter to delay taking timely action.

Because Potter has failed to provide this court with clear, cogent, and convincing evidence that she detrimentally relied on a statement by a Department spokesperson, we must reject her estoppel claim.

Accordingly, we reverse.

ARMSTRONG, C.J., and HUNT, J., concur.

Review denied at 142 Wn.2d 1012 (2000).